IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO.: 5:09-CV-321-H

OSCAR ALBRITTON,

    Plaintiff,

v.

                         **ORDER**

SESSOMS & ROGERS, P.A., et al.

    Defendants.

This matter is before the court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and plaintiff's motion to strike. Responses and replies have been filed, and the time for further filings has expired. These matters are ripe for adjudication.

### STATEMENT OF THE CASE

On July 15, 2009, plaintiff filed his original complaint with this court, asserting claims under the Fair Debt Collections Practices Act ("FDCPA") as well as North Carolina state laws governing debt collection activities. Initially, plaintiff filed suit against Sessoms and Rogers, P.A. ("S&R"), Richard J. De Giacomo, Jr. ("De Giacomo"), North Star Capital Acquisitions, LLC ("North Star"), and Jessica Sled. However,

plaintiff voluntarily dismissed his claims against Ms. Sled on August 29, 2009.

On September 1, 2009, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the remaining defendants filed a motion to dismiss plaintiff's complaint in its entirety for failure to state a claim upon which relief can be granted. Plaintiff responded by filing his amended complaint in which he dropped his state-law claims, added factual allegations, and added an additional basis for relief under the FDCPA. Defendants subsequently filed a motion to dismiss plaintiff's amended complaint on October 2, 2009.

Finally, on February 11, 2010, defendants submitted a suggestion of subsequently decided controlling authority. On February 25, 2010, plaintiff moved to strike this notice in its entirety.

## STATEMENT OF THE FACTS

Plaintiff, Oscar Albritton, maintained a personal credit account with Wells Fargo Bank. Sometime prior to 2008, plaintiff defaulted on his debt of around $4,000 by not making payments on the account under the required terms. The defaulted debt was sold by Wells Fargo in May of 2008 to defendant North Star, who engages in the business of collecting consumer debts and purchasing defaulted debt.

2

In the process of collecting plaintiff's debt, North Star employed defendant S&R, a North Carolina law firm in the business of collecting consumer debts. S&R filed a state-court debt collection action on behalf of North Star against plaintiff on January 23, 2009, in the District Court of Cumberland County, North Carolina. (Am. Compl. ¶ 29.)

In preparation for its lawsuit against plaintiff, S&R requested North Star execute an affidavit setting out the details of plaintiff's outstanding debt. (Am. Compl. ¶ 31.) On February 3, 2009, an employee of North Star, Jessica Sled, executed an affidavit ("the Sled Affidavit") stating in part:

> **Oscar Albritton** is currently indebted to North Star Capital Acquisitions, LLC, the Plaintiff herein, in the sum of **$4,064.10**, together with interest thereon at the rate of **8.00%** per annum from and after November 26, 2008, and costs.

(Sled. Aff. ¶ 5 (emphasis in original) [DE #16 Ex. 1].) Also pertinent to the motions before the court, paragraph four of the Sled Affidavit stated:

> If a statement of account is attached hereto, that statement is a true and accurate accounting and accurately reflects the sums owed by [Albritton] to North Star Capital Acquisitions, LLC pursuant to the written credit agreement between the parties.

3

(Sled. Aff. ¶ 4.) However, no such statement of account was attached. Ms. Sled signed only the one-page affidavit that day, February 3, 2009.

Cumberland County District Court utilizes nonbinding arbitration for certain civil cases. North Star's action against plaintiff to collect the $4,064.10 debt was selected for such arbitration. The governing arbitration rules required the parties to exchange information as to their witnesses, evidence, and contentions prior to the arbitration hearing. (Am. Compl. ¶ 39.) For purposes of this pre-arbitration exchange, S&R calculated what plaintiff's total outstanding debt would be at the time of arbitration, June 11, 2009. (Stmt. of Acct. [DE #16 Ex. 1].) Defendant avers that this was necessary as the arbitration rules required plaintiffs to state what award they were seeking. (Defs.' Mem. Supp. Dfs.' Mot. Dismiss [DE #21] at 13-14.) S&R used the principal and interest rate as set out in the Sled Affidavit of February 3, 2009 to calculate the balance owed of $4,239.50, and then put this figure in a one-page Statement of Account dated May 29, 2009. Neither party alleges the amounts contained in either the February 3, 2009 Sled Affidavit or the May 29, 2009 Statement of Account are incorrect.[1]

---

[1] The court notes that even though plaintiff appears to summarily dispute the validity of the debt (Am. Comp. ¶ 26) this

4

An attorney employed by S&R, defendant Richard J. De Giacomo, Jr., submitted North Star's pre-arbitration packet to plaintiff on May 29, 2009, approximately ten days before the scheduled arbitration. The packet consisted of five pages stapled together: a two-page statement concerning the case; the February 3, 2009 Sled Affidavit; the May 29, 2009 Statement of Account; and a demand letter dated December 28, 2008.

Plaintiff's complaint alleges three acts of deception or misrepresentation involving these documents in the pre-arbitration proceeding. First, plaintiff claims that the February 3, 2009 Sled Affidavit is a false representation because it in fact swears to the May 29, 2009 Statement of Account, a document that was not yet in existence. (Am. Compl. ¶¶ 28, 36.) In this vein, plaintiff construes the statement in ¶ 4 of the February 3, 2009 Sled Affidavit[2] to mean that Ms. Sled is swearing that if at any future point in time, anyone physically attaches to the piece of paper she is signing that day on February 3, 2009, any statement of account, she swears

---

is mentioned only once in a paragraph establishing jurisdiction and, even reading the complaint in the light most favorable to plaintiff, the <u>amount or existence of the debt</u> cannot be said to form the basis of any of his FDCPA claims. Plaintiff's FDCPA claims are derived solely from the manner in which the Statement of Account and Sled Affidavit were allegedly sworn to and presented. For purposes of this action, the amount of the debt at issue is therefore not a point of contention.

[2] "[I]f a statement of account is attached hereto, that statement is a true and accurate accounting..." (Sled Aff. ¶ 4)

5

under oath and risk of perjury to the accuracy and truth of such future document. Plaintiff thus asserts that this is impossible; it is a lie to swear to something you have never seen, and therefore both Ms. Sled and the affidavit are "false, deceptive, and/or misleading." (Am. Compl. ¶ 37.)

Second, plaintiff argues that the Sled Affidavit is a false representation in and of itself because Ms. Sled did not know whether a statement of account was attached or not when she signed the document. (Am. Compl. ¶ 34). It is unclear exactly under what alleged circumstances Plaintiff arrives at this conclusion. The court is left to construe the claim, on the face of its language, that Ms. Sled gave a false statement because she could not, as a matter a physical observation, determine whether a statement of account was "attached" to the piece of paper she was signing, and therefore her conditional "[i]f a statement of account is attached..." language, (Sled. Aff. ¶4) was dishonest/false/fraudulent.

Plaintiff's third and final allegation is that defendant falsely represented to plaintiff that the February 3, 2009 Sled Affidavit swore to the May 29, 2009 Statement of Account. (Am. Compl. ¶ 36). Plaintiff alleges that, even if Ms. Sled did not actually attest to a non-existent statement of account by stapling the May 29, 2009 Statement of Account to her February 3, 2009 affidavit, defendants <u>falsely represented</u> to plaintiff

6

that Ms. Sled had sworn to the validity of the Statement of Account 116 days before it even existed. This alleged misrepresentation is based solely on the manner in which the documents were stapled together in the pre-arbitration packet. The above three acts are all alleged as conduct violating §§ 1692e(2)(A), 1692e(10), and 1692f of the FDCPA.

## COURT'S DISCUSSION

### I. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for failure to state a claim upon which relief can be granted. The intent of Rule 12(b)(6) is to test the sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In order to survive a 12(b)(6) motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, it need not "accept the legal conclusions drawn from the facts" nor "unwarranted inferences,

7

unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006). A claim must be plausible on its face. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

II. **Sufficiency of Claims Pled Under 15 U.S.C. § 1692e(2)(A)**

Plaintiff claims defendants are liable under § 1692e(2)(A) of the FDCPA, which provides in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. . . . [T]he following conduct is a violation of this section:
>
> . . . .
>
> (2) The false representation of —
>
>     (A) the character, amount, or legal status of any debt;

15 U.S.C. § 1692e(2)(A) (emphasis added).

Plaintiff has not properly pled a § 1692e(2)(A) claim because he has not alleged any facts from which the court could draw a reasonable inference that the character, amount, or legal status of plaintiff's debt was falsely represented. There are no facts whatsoever in the pleading setting out or alleging that either the $4,064.10 balance in the Sled Affidavit or the

8

$4,239.50 balance in the May 29, 2009 Statement of Account were falsely represented. In fact, the amount, character, and legal status of the debt in question have never been seriously questioned.[3] Plaintiff's claims deal strictly with the manner and means by which proof of the debt was presented. Therefore, plaintiff's § 1692e(2)(A) claim dealing with the false representation of the debt itself has not been properly pled and should be dismissed.

III. **Sufficiency of Claims Pled Under 15 U.S.C. § 1692e(10)**

Plaintiff additionally claims that defendants are liable under § 1692e(10) of the FDCPA, (Am. Compl. ¶ 80), which prohibits a debt collector from using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692e(10).

Reading the complaint in the light most favorable to the plaintiff, there are three ways plaintiff appears to be alleging defendants used a "false representation" or "deceptive means" actionable under § 1692e(10) of the FDCPA:

(1) The Sled Affidavit is a false representation because it in fact swears to the May 29, 2009 Statement of Account;

---

[3] See n.1 supra.

9

Case 5:09-cv-00321-H   Document 34   Filed 08/03/10   Page 9 of 19

(2) The Sled Affidavit is a false representation or is deceptive because Ms. Sled did not know whether a statement of account was attached when she signed; and/or

(3) Defendants falsely represented to plaintiff that the Sled Affidavit attested to the May 29, 2009 Statement of Account. Each branch of plaintiff's claim is discussed below:

a. The Sled Affidavit is a False Representation Because it Swears to the Statement of Account.

Plaintiff alleges that defendants employed a "false representation" in the process of collecting plaintiff's debt because the February 3, 2009 Sled Affidavit swore to the truth and accuracy of the May 29, 2009 Statement of Account. Yet, in plaintiff's own words, "[a]t the time Ms. Sled swore as an affiant, it was not possible for her to swear that *any* statement of account attached would be a true and accurate accounting and accurately reflect the sums owed at some future point in time." (Am. Compl. ¶ 35.) With no supporting facts pled to back up the assertion Ms. Sled was swearing to future non-existent documents, plaintiff has not met the threshold pleading requirement. The court would have to construe the statement "If a Statement of Account is Attached" in such a highly unusual and hyper-technical way as to conclude Ms. Sled was swearing to any piece of paper stapled to her Affidavit for all time. Even

10

under the interpretation of the least sophisticated consumer,[4] Ms. Sled swore solely to what was in front of her on February 3, 2009, which did not include the May 29, 2009 statement. As such, plaintiff's theory is unsupported by the face of the affidavit in question and he has not pled a plausible statement of facts to survive a motion to dismiss on this theory.

> b. <u>The Sled Affidavit is a False Representation in and of Itself Because Ms. Sled Did Not Know Whether or Not a Statement of Account was Attached When She Signed</u>

Plaintiff asserts that "Ms. Sled did not know at the time she swore as affiant whether a statement of account was attached to her affidavit or not" (Am. Compl. ¶ 34) and claims this renders her affidavit a false representation. In other words, because she did not know, did not care, or was willfully blind to the presence of anything attached to her affidavit, her conditional statement "If a Statement of Account is attached . . ." was somehow deceptive or misleading.

It is undisputed that when Ms. Sled affixed her signature to her affidavit no statement of account was attached. It would therefore be an unreasonable inference to conclude that she was unaware whether or not any other documents were attached to the

---

[4] The case, <u>United States v. Nat'l Fin. Servs. Inc.</u>, 98 F.3d 136 (4th Cir. 1996), set forth a "least sophisticated consumer standard", in which the court must look at the alleged actionable conduct with respect to how the least sophisticated consumer's understanding of the debt or his FDCPA rights might be affected.

11

one-page affidavit. Furthermore, even if this allegation were plausible, plaintiff has not explained how this conduct would be a misrepresentation or deception aside from the mere conclusory accusation that it is deceptive. Based on the foregoing, plaintiff has not pled a plausible act of false representation or deception.

### c. Defendants Falsely Represented to Plaintiff that the Sled Affidavit Swore to the Accuracy of the May Statement of Account

Plaintiff's last pled act of misrepresentation centers around defendants' act of stapling the Statement of Account to the Sled Affidavit. Plaintiff alleges that by stapling the statement to the affidavit, defendants falsely represented that Ms. Sled had sworn to the validity of the Statement of Account 116 days before it even existed.

For this claim, the court must determine whether defendants' actions would plausibly deceive or mislead the least sophisticated consumer. United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131 (4th Cir. 1996) (setting out the "least sophisticated consumer" standard). While this standard protects consumers from the "gullible" to the "shrewd," it also "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Nat'l Fin. Servs., 98 F.3d at 136. Thus, the

12

issue in this case, based on plaintiff's facts and exhibits, is whether it is plausible that a rational consumer, operating under the circumstances presented here would be misled or deceived by the manner in which defendants stapled the arbitration packet.

Defendants submitted four documents, consisting of a total of five pages, in a pre-arbitration packet to plaintiff and the arbitrator. Even assuming that the Sled Affidavit and Statement of Account were stapled right next to each other in that packet, the court is unable to discern how even the least sophisticated consumer could have been deceived or misled by defendants' actions.

Based on the forgoing, plaintiff has not pled a plausible § 1692e claim.

### IV. Sufficiency of Claim Pled Under 15 U.S.C. § 1692f

Plaintiff also alleges that he is entitled to damages under 15 U.S.C. § 1692f. This cause of action under the FDCPA is a sort of catch-all, picking up unfair practices that manage to slip by §§ 1692d & 1692e. Section 1692f provides generally, "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The section then provides eight specific practices that are violations with the qualification that an action under § 1692f is not limited to those enumerated violations.

13

Plaintiff has not alleged that the conduct of any of the defendants falls under the eight enumerated categories of violations. This court thus considers defendants' acts in light of § 1692f's general "unfair" or "unconscionable" conduct prohibition. Plaintiff's alleged harm here is that, when the allegedly false/deceptive arbitration packet is relied upon, it causes the May 29, 2009 Statement of Account to "appear to be more likely valid that it was without the false statement." (Am. Compl. ¶ 66.)

It is not clear plaintiff has pled any facts showing plaintiff's reliance on one of the alleged misrepresentations makes the Statement of Account (a) appear more valid, or (b) appear "unfairly" or "unconscionably" more valid. The May 29, 2009 Statement of Account prepared by defendants is one-half page long. It displays the balance of $4,064.10, the same balance uncontrovertibly sworn to in the Sled Affidavit. It then uses an elementary calculation with the 8% interest rate, also sworn to in the Sled Affidavit, to arrive at a June 11, 2009 balance of $4,239.50. The difference is $175.48. None of these figures are disputed. It is further clear from the facts and evidence presented with the complaint that plaintiff knew there was a debt collection action against him. He was also on notice that the debt was accruing interest. (See Am. Compl. Ex. 1 (demand letter stating, "[Plaintiff] should be aware,

14

however, that interest may continue to accrue on the account.").) Based on the face of plaintiff's complaint and supporting exhibit, plaintiff has not pled a plausible set of facts indicating that any misrepresentation resulting from the stapling of the documents by defendants would make an acknowledged, readily calculable balance due "appear more likely valid," especially *unfairly* or *unconscionably* so.

Based on the foregoing, plaintiff has not pled a proper § 1692f claim, and defendants' motion to dismiss is granted as to plaintiff's § 1692f claim.

## V.  Materiality

Defendants additionally argue that even if plaintiff has properly pled that defendants' statements or actions were false or misleading, these false or misleading statements/actions are not actionable because they are not material. Hahn v. Triumph P'ships LLC, 557 F.3d 755, 757-58 (7th Cir. 2009) ("Materiality is an ordinary element of any federal claim based on a false or misleading statement. . . . A statement cannot mislead unless it is material, so a false but non-material statement is not actionable."); see also Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009).

Although the materiality standard has not been addressed by the Fourth Circuit Court of Appeals, in this district the court recently adopted the "materiality" standard from the Sixth and

15

Seventh Circuits. (Order, O'Fay v. Sessoms & Rogers, P.A., No. 5:08-cv-615-D (E.D.N.C. Feb. 9 2010).[5] In O'Fay, a plaintiff brought an FDCPA § 1692e claim because the defendant law firm mistakenly labeled an exhibit in its state-court action as a "copy" of a billing statement, when in fact the exhibit contained a minor address error from the original billing statement. The court concluded that any confusion would be "immaterial" and in no way would mislead the debtor as to her rights under the FDCPA.

Plaintiff, of course, argues that this court should not apply the materiality standard and that any false or deceptive representation, no matter how small, should be actionable under the FDCPA. Based on the absurd results that could come from plaintiff's interpretation, wherein every *de minimis* error would render a debt collector liable under the FDCPA and every debt collection defense would turn into a hunt for the slightest misspelling, mislabeling, or minute technical falsity, this court applies the materiality standard.

Under this standard, plaintiff has not pled a material falsity. The numbers and facts relating to the debt as represented by the February 3, 2009 Sled Affidavit and May 29, 2009 Statement of account are not in dispute. The alleged

---

[5] This case was brought to the court's attention by Defendant's Suggestion of Subsequently Decided Authority, [DE #29], and is the subject of Plaintiff's Motion to Strike.

misrepresentation concerns whether someone swore to these undisputedly accurate numbers prior to seeing them. As such, this misrepresentation does not materially relate to the debt at issue in any way that would mislead the debtor as to his rights under the FDCPA. Therefore, in addition to the reasons discussed supra, plaintiff's FDCPA claims are dismissed for failure to show a material violation.[6]

VI.     **Motion to Strike**

Defendants, on February 11, 2010, submitted a suggestion of subsequently decided authority [DE #29]. In their filing, it was stated:

> Defendants submit the Order, O'Fay v. Sessoms & Rogers, P.A., No. 5:08-cv-615-D (E.D.N.C. Feb. 9 2010), from this Court as subsequently decided authority on this Court's adoption of the 'materiality standard' for claims under 15 U.S.C. § 1692.

[DE #29].

Plaintiff, in response, filed a motion to strike defendants' suggestion of subsequently decided authority. [DE #30]. In short, plaintiff argues that defendants' motion violated Local Rule 7.1(g), which reads:

---

[6] Defendants also argue that plaintiff's case should be dismissed because plaintiff has not properly pled that the debt at bar is a "consumer debt" as defined by the FDCPA. Reading the complaint in the light most favorable to plaintiff, the court is satisfied that plaintiff has sufficiently set out both Albritton's status as a "consumer" and Albritton's debt as a "consumer debt." (See Am. Compl. ¶¶ 25-26.)

17

> A suggestion of subsequently decided controlling authority, <u>without argument</u>, may be filed and served at any time prior to the court's ruling and shall contain only the citation to the case relied upon if published or a copy of the opinion if the case is unpublished.

Local Rule 7.1(g) (emphasis added). Specifically, plaintiff argues that the one-half sentence in defendants' motion that reads, "*on this court's adoption of the 'materiality standard,'*" is impermissible argument and therefore defendants' entire submission should be stricken.

The court notes that O'Fay was a multi-part order, and defendants, at most, merely directed the court to the section of the order they were suggesting as "controlling authority." Defendants did not argue the merits of their case nor did they raise any argument as to why this court should adopt that standard. As such, the court declines to consider the one-half sentence at issue "argument" in violation Local Rule 7.1(g).

For these reasons, plaintiff's motion to strike is denied.

18

Case 5:09-cv-00321-H   Document 34   Filed 08/03/10   Page 18 of 19

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [DE #21] is GRANTED and plaintiff's motion to strike [DE # 30] is DENIED. The clerk is directed to close this case.

This 3rd day of August 2010.

MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
AMP